# ALBERT Y. DAYAN            *80-02 Kew Gardens Rd., # 902, Kew Gardens, N.Y. 11415*

*Attorney at Law*                                    *Tel: (718) 268-9400:     Fax: (718) 268-9404*

December 12, 2012

The Honorable Robert P. Patterson
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York. New York 10007

      Re:    United States v. Natan Peysakov
                <u>10 Cr. 918</u>

Dear Judge Patterson:

      This Sentencing Memorandum is submitted in a letter form in connection with the

upcoming sentencing of Mr. Peysakov scheduled for 10:00 A.M. on December 18, 2012.

      Pursuant to Fed. R. Crim. P. 32(i)(3) and 18 U.S.C. § 3553(a), NATAN PEYSAKOV

respectfully submits to this Honorable Court for consideration, relevant information for

determination of sentence that is no greater than necessary to achieve the goals of sentencing

under § 3553(a)(2).  In support, the Defendant states as follows:

      As an initial matter, the Defendant pleaded guilty  before this Honorable Court on

February 15, 2012 to <u>Count 1</u> – Conspiracy to Commit Mail Fraud-  in accordance with a plea

agreement which stipulates the following: The base offense level is 7 pursuant to U.S.S.G Sec.

2B1.1 (a)(1).  The offense level is increased by 8 pursuant to U.S.S.G. Sec. 2B1.1(b)(1)(E)

1

because as stipulated by the Government and Defense, Mr. Peysakov's offense involved a loss of $75,000 to the insurance company.   In view of Mr. Peysakov's acceptance of responsibility for his involvement in the charged offense, through his allocution and subsequent conduct, a two-level reduction is warranted, pursuant to U.S.S.G. sec3E1.1(a).   Mr. Peysakov has zero criminal history points.  Accordingly, his criminal history category is 1.

The Plea Agreement contemplates a likely adjusted offense level 13.  The advisory guideline range associated with an adjusted offense level of 13 is 12 to 18 months of imprisonment.   The U.S. Probation Department by U.S. Probation Officer Pamela C. Perea recommends 6 months' of imprisonment, 3 years' probation with 6 months served in home detention.   I respectfully submit that in keeping with the sentencing mandate under 18 U.S.C. Sec. 3553(a), mitigating factors exist in this case demonstrating that a sentence below the stipulated Guideline calculation and U.S. Probation recommendation is warranted.  The undersigned as counsel for Mr. Peysakov submits that, in light of the decisions issued in cases such as United States v. Booker, 125 S.Ct. 738 (2005) and Kimbrough v. United States, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007), this Court is free to issue a sentence in compliance with 18 U.S.C. § 3553 that is fair based upon the specific facts of this case, the defendant's minor involvement in this case and his otherwise good and honest character and nature.  For the reasons here and after set forth, we are respectfully asking Your Honor to err on the side of mercy and leniency in this particular case because of the disproportionate sentencing guideline recommendation when measured with the minimal conduct and involvement of Mr. Peysakov in this case.

Mr. Peysakov is most humble of men that I ever met in my practice.  He is respectful, grateful, polite, devout and dutiful.  As is transparent in the letters attached hereto, his life evolves in work and service of his immediate family and, when he is able, in the service of others who are in need of moral and financial support.  Nathan Peysakov was born on January 30, 1971, in Dagestan, in the former Soviet Union.  He is one of three children born to the marital union of Gregory Peysakov, who passed away at the age of 62, in October 2003, from lung cancer; and Anna Peysakov, age 68, a resident of Brooklyn, New York, whom Mr. Nathan Peysakov continues to support both emotionally and financially.  His family, as members of the Jewish minority in a former Muslim region of Dagestan USSR, lived under constant threat of discrimination, violence and persecution.  At the age of eighteen, Mr. Peysakov was drafted into the Soviet military, where he had experienced sustained physical and mental abuse at the hands of officers and other soldiers because he was Jewish.   The physical pain and mental cruelty he endured while growing up and in military service, however, did not decay Mr. Peysakov's fine character.  He was honorably discharged from the tyrannical soviet army.  He continued to be an honorable and good person to everyone he came in contact with.  He continued to do well in school, be gainfully employed starting at the age of thirteen and always respected and helped his parents.  Nathan Peysakov never asked nor looked for an easy way in life.  He just was not raised that way.  In 1997, at the age of 26, he entered the United States with his family as refugees.  On December 9th , 2003, Peysakov was married to Anastasiya.  They now have three children; Lauren Peysakov (age 8), Linda Peysakov (age 5) and George Peysakov (born May 5, 2012).

3

He was able, through hard work because for him there was no other way, to gain a technical education, to get a good job and build a beautiful family here in the United States.  His three Children live in a good and loving home.  They attend good schools and are provided by their father and mother the opportunity to receive many extracurricular activities that Mr. Peysakov was not able to enjoy as a child.  He is a first-class son, husband, father, sibling and man.   He is the source of a first-class American family in the making.

So how does one reconcile Peysakov, the man described above, with the one who stands before this Court for sentencing on criminal charges?  Your Honor, I respectfully submit that the cultural-gap in this instance is between a man raised in the Soviet Union's way of making and brokering business and the same man now having found himself confronted with the U.S. statutes criminalizing exactly that which was acceptable in the normal course of business back in the USSR.  At the time of the instant offense, although Mr. Peysakov knew that what he was doing was against the law, due to the vast cultural gap between the U.S. insurance statutes forbidding referral fees amongst professionals and non-professionals alike and what was at one time in Peysakov's life considered to be ordinary course of business when he lived in former Soviet Union,  Mr. Peysakov did not feel  -- *when he referred a doctor for a few of Mr. Chervin's patients for a monetary commission* -- that what he was doing was so terribly and seriously wrong.  Of course he understands now.

He recommended a physician to Aron Chervin, for which Mr. Peysakov stood to make a commission.  He knew that the insurance company should be kept in the dark about the commission he stood to receive; otherwise the insurance company would not honor the payment for the treatment of the patients.  Although Mr. Peysakov understood that what he was doing was

4

against the law, he believed then that it was not so terribly wrong because the patients were real, with real injuries and from real auto accidents.     He did not then believe that he was directly involved in stealing from anyone because he believed the patients to be real and the medical service necessary.  Simply put, he comes from a culture of buying, selling and brokering items or services at a profit with little or no awareness and/or concern for infringement of insurance or governmental policies.  He felt that if the patients were really involved in an auto accident and if they were really looking for a physician, what would be the harm in recommending a physician and making a little money on the side.  Of course, now he knows how dreadfully wrong his reasoning was back when he dealt with Mr. Chervin.  Mr. Peysakov never imagined that his infrequent and not even primary for himself financial arrangement with Aron Chervin, with no out of the ordinary financial benefits to Mr. Peysakov, was putting his entire family and himself at serious risk.  If Mr. Peysakov believed then, that his actions could even remotely lead to prosecution in Federal Court and face the possibility of incarceration, he would never take that chance.  It was not worth it.  He now understands the seriousness of the fraud he was involved in.  Unfortunately for him, not on time and at a great cost to him and his family.  The fateful lesson in this case for Mr. Peysakov of arrest, prosecution and conviction has caused an otherwise a good hard working family-man much grief and pain.

     As I mentioned above, he is otherwise an honest and a good man.  All his life he had worked real jobs.  But for the instant matter, he has no history of attempting to earn a livelihood with anything but honest and hard work with his own hands.  I respectfully submit that his was not a very cold, calculating, and extensive fraud.   He did not have any expectations of riches and wealth from his association with Mr. Chervin.

Mr. Peysakov is remorseful, regretful and contrite.  He prays only for a chance to return to his family so that his children would not even miss him for a day.  He would never take a chance to be incarcerated away from his loved ones for even one day if he imagined that it would be possible due to his involvement with Aron Chervin.  He has made an attempt, as much as possible at this juncture, to show his remorse and acceptance of responsibility to our society by waiving many of his substantive rights, admitting his conduct and pleading guilty to his involvement in the offense.  These actions have assisted the government and the judiciary in facilitating the administration of justice.  The Defendant wishes to further repay society by instant re-payment in full to the insurance company the loss of $75.000.00 which they sustained due to his involvement.  He will satisfy all conditions set by Your Honor and will never be involved in improper conduct of any kind in the future.  He recognizes that his offense was serious.  He acknowledges that his conduct was in violation of this country's criminal and civil laws, as well as in violation of Peysakov's personal ethics, morals and integrity.

As this Court is aware, in United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory guideline system created by the Sentencing Reform Act of 1984 (SRA) was unconstitutional.  Therefore, the appropriate remedial measure was to declare the Guidelines merely advisory. See Booker, 125 S. Ct. at 757 (2005) (Breyer, J.).  After Booker, federal sentencing is vastly different.  Treating the Guidelines as advisory requires that the Court consider the guideline range calculation as merely one of many factors in determining a sentence no greater than necessary to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2).  In Nelson v. United States, 129 S.Ct. 890 (2009/0, the Supreme Court reemphasized that the guidelines are both advisory and not to be presumed reasonable.

Mr. Peysakov completely accepts responsibility for his conduct in this case.  He has matured in the ways of our country and now appreciates the ways our country is challenged to regulate the free and honest flow of commerce.   Even when the Guidelines were mandatory, post-offense rehabilitation was a permissible ground for a downward departure.  United States v. Garcia, 926 F.2d 125 (2nd Cir. 1991); United States v. Rudolph, 190 F.3d 720, 722-23 (6th Cir 1999); United States v. Fagan, 162 F.3d 1280, 1284-85 (10th Cir. 1998;.   After the Guidelines were made advisory, this conduct becomes even more important at sentencing.

Remorse is also a factor the Court may consider.  United States v. Fagan, 162 F.3d 1280, 1284-85 (10th Cir. 1998).  Under the old departure analysis, "[b]ecause remorse is not a prohibited factor, but a factor already considered in the Sentencing Guidelines, a sentencing court may depart downward if it finds that remorse is present to an exceptional degree."  Mr. Peysakov arrived at this country at twenty six years old.  He could not have been expected to instantly eradicate everything he was brought up with in the former Soviet Union and immediately absorb the ways of the United States.  This case is a cold awakening for him.  Based on the history of Mr. Peysakov and the facts of his small involvement in this case, it is extremely unlikely that he will commit another violation or crime. He has displayed respect and obedience for prêt-trial rules and regulations during this entire case.  Counsel for defendant respectfully asks that this Court take these factors into consideration under § 3553(a) in determining that a sentence of a probation for Mr. Peysakov and full restitution to the insurance company for his involvement is all that is necessary to achieve the ends justice in his particular case.

7

Even when the Guidelines were mandatory, situations where extreme family responsibilities existed was a permissible ground for a downward departure.  United States v. Canoy, 38 F.3d 893 (7th Cir. 1994)(family circumstance departure would be reasonable where defendant has three exemplary children, two of whom are young girls with Honors in Scholastic Achievements recognized by the city of New York Board of Education, and separation from family would cause irreparable damage to the children); United States v. Pena, 930 F.2d 1486 (10th Cir. 1991)(downward departure upheld where defendant was a single parent of a two-month-old, supported another daughter and her infant, and whose illegal conduct was aberrational). According to U.S.S.G. § 5H1.6, the court must look to such factors as whether there is a danger to the defendant's family members should a departure be granted and whether incarceration of a defendant will cause a "substantial, direct, and specific loss of essential caretaking" in deciding whether family responsibilities warrant a departure.

In this case, removing Mr. Peysakov from his children will create a situation where an excellent parent will be removed from the lives of his children, thereby placing his children in circumstances which can lead to a downward spiral of emotional difficulties.  Mr. Peysakov's life is his children and family.  He teaches his children respect, religious education and honesty. Both of his older children are in the Board Of Education Honor-Roll Programs.  In my humble opinion before Your Honor, I do not believe that children just become that way unless they are constantly encouraged and invested into by devout parents.  A sudden and unusual absence of a parent from an otherwise dependant child's life can lead a child into an irreversible change of behavior and concentration in scholastic, social and even psychological development of the child. I have personally seen this type of a condition occur in otherwise very accomplished children.

8

Both of Mr. Peysakov's young daughters are in their developing and tender years and are **excellent students**. (Please see exhibit "A")  He is the primary parent who does home work with them, attends every PTA meeting and drives them to tutors.  He drives and waits for them at Gymnastics, Piano, art classes and all other additional activities that young children enjoy.  We ask Your Honor most sincerely to maintain this perfect balance in the lives of two precious individuals by keeping Mr. Peysakov at liberty with them.  He obviously worked hard to build a perfect environment for his children to be happy and to achieve excellence in education.  Mr. Peysakov is not a man of fame, prominence, status and financial reputation in his community. He is a man whose world is only as big as his immediate family.  Of such a man's devotion and everyday struggles volumes can be written.

In *Gull, the* Supreme Court upheld a sentence of 36 months' probation imposed on a defendant facing an advisory guidelines range of 30 to 37 months imprisonment.  In so finding, the Supreme Court explained that "probation is not granted out of a spirit of leniency…[and] is not merely letting an offender of easily….[P]robation…conditions imposed on an individual can have a significant impact on both that person and society…" Gall, 128 S.Ct. at 596, n4 (internal citations and quotation marks omitted).  Indeed, The Supreme Court noted that probation is a substantial punishment.  "Offenders on probation are nonetheless subjected to several standard conditions that substantially restrict their liberty,".  In this case, Peysakov's conviction and probationary sentence will restrict his liberties for at least 24 months of his life.   This conviction and its sentence, even if probation, may be a life long imposition of hardship on Mr. Peysakov. His employment options, here in the United States, and licenses and permits he may need for work will be limited.  In his case, probation is not simply a lenient option because of strict and

time consuming requirements of being supervised and reporting to probation.  He is a first time and last time offender and he will carry the heavy burden of this federal felony conviction for the rest of his life in the United States.  It is respectfully submitted, that release on probation under conditions designed to fit this particular situation will effectively satisfy the appropriate specific and general deterrent of similarly situated individuals.

In this case, a felony conviction, judgment and deprivation of ordinary civic rights would send the message to both Mr. Peysakov and to others in the community that violating the laws of insurance, regardless of the level of one's involvement, has serious consequences.  A non-custodial sentencing option with full and immediate restitution would balance retribution with rehabilitation by complying with the purposes set forth pursuant to 18 U.S.C. Sec.3553(a)(2).  It would reflect the seriousness of the instant offense, the goals of punishment, personal as well as communal deterrence, protection of the public and just as important would take into account the mitigating factors unique to Mr. Peysakov presented herein.

We submit that the Guideline range and the recommendation of the Department of Probation in this case is greater than necessary, to achieve the goals of sentencing under 18 U.S.C. § 3553(a).  Accordingly, the Defendant respectfully requests that this Court take into consideration the above factors and sentence Mr. Peysakov to probation with other conditions that seem Just and Proper to this Honorable Court and are sufficient to achieve the goals of sentencing under § 3553(a)(2).

Respectfully submitted,


_____/s/_____
Albert Dayan, Esq.
Attorney for the Defendant
80-02 Kew Gardens Road, Suite 902
Kew Gardens, New York 11415
(718) 268-9400 (voice)
(718) 268-9404 (facsimile)
dayanlaw@aol.com

11